# Pepper Hamilton LLP
Attorneys at Law

The New York Times Building
37th Floor
620 Eighth Avenue
New York, NY 10018-1405
212.808.2700
Fax 212.286.9806

Samuel J. Abate, Jr.
direct dial: 212-808-2706
direct fax: 866-738-9621
abates@pepperlaw.com

April 22, 2011

Honorable Marianne B. Bowler
United States Magistrate Judge
United States Courthouse
1 Courthouse Way
Boston, MA 02210

Re:   Fecho, et al. v. Eli Lilly and Company, et al.,
      Civil Action No. 1:11-cv-10152 (MBB)

Dear Magistrate Judge Bowler:

        The parties have submitted letters to the Court raising certain discovery and case management issues that need to be resolved by the Court. Since we are at a critical point in this litigation, we thought it appropriate to respond to Mr. Levine's April 15 letter and to identify other relevant issues that require your attention. Fundamental to each of these issues is the enforceability of the terms of the CMO agreed upon by the parties. Mr. Levine's recent actions require a departure from the CMO and raise the likelihood that the current CMO timetable will need to be extended. We propose the following agenda for our conference on April 26:

1.   Dr. Fischer

2.   Dr. Hilakivi-Clarke

3.   Supplementing Reports

4.   Naming Additional Experts Beyond the Time Period in the CMO

5.   September Hearing

6.   The Complaint

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Marianne B. Bowler
Page 2
April 22, 2011

      Issue No. 1:  Dr. Fischer.  We raised this issue in our April 12 letter.  We were prepared to take Dr. Fischer's deposition until two days before the deposition, when Mr. Levine notified us by e-mail that he planned to expand the proposed testimony of Dr. Fischer by adding 10 new opinions.  These opinions cannot fairly be read to be included by inference in her prior report, as Mr. Levine claims. We previously provided you with copies of the Fischer report and Mr. Levine's e-mail.  A review of those two documents makes apparent that the points raised by Mr. Levine are new and far more expansive than what is contained in Dr. Fischer's report.  If Dr. Fischer is going to be limited to the substance of her February 25 expert report, and not permitted to offer the new opinions contained in Mr. Levine's correspondence, then we are prepared to proceed with her deposition as soon as she is available.  If, however, the Court rules that it is permissible for plaintiffs to supplement her expert report, despite the fact that the CMO contains no provision permitting such supplementation, then the defendants believe we are entitled pursuant to the Federal Rules to receive a supplemental report from Dr. Fischer, not counsel, containing her opinions and the bases for each sufficiently in advance of the deposition so that we can consult with experts and prepare.  And, to the extent any of our experts' reports need to be supplemented in response, we reserve the right to do that.  A ruling in this regard will necessarily require negotiation of a new CMO schedule.

      Issue No. 2: Dr. Hilakivi-Clarke.  There are numerous issues regarding Dr. Hilakivi-Clarke.  When Mr. Levine produced her expert report on March 1, it was with the caveat that it was not to be shared with others because she relied on unpublished data and there were concerns about the intellectual property rights of Georgetown University and Dr. Hilakivi-Clarke (it notes - Confidential-For Deposing Attorney's Eyes Only.)  On several occasions, we invited Mr. Levine to prepare a stipulated protective order so we could obtain the unpublished data and move forward with her deposition.  But Mr. Levine never provided it and continuously told us he was likely to withdraw her as an expert because of these concerns.  Mr. Levine officially withdrew Dr. Hilakivi-Clarke on March 31, following the deposition of Dr. Newbold.  Last week, however, Mr. Levine told me that he was making her available on April 19 and that he did not withdraw her (only that he was thinking about it doing it).  We objected because in our view she was withdrawn, we never received her unpublished data or background materials, and our expert reports were being prepared without reference to Dr. Hilakivi-Clarke.  In Mr. Levine's April 15 letter, which was received late that evening after 9:00 p.m., we learned that (a) he now acknowledges she had been withdrawn, and (b) that Georgetown had given her permission to make her data available and be deposed.  This last item was never mentioned to us last week.  We think it was inappropriate to submit to the Court her report and CV since she had been withdrawn by plaintiffs as an expert and her status as an expert witness is clearly an issue to be addressed at the hearing.

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Marianne B. Bowler
Page 3
April 22, 2011

The issues regarding whether Dr. Hilakivi-Clarke is in or out as an expert are two-fold. First, can plaintiffs resurrect a withdrawn expert who is relying primarily on unpublished data? We do not believe the reliance on unpublished data which has not been peer reviewed meets the *Daubert* threshold, so the Court need not consider her opinions at this juncture. Nor do we believe the conduct of Mr. Levine is contemplated by the CMO. We agreed on one disclosure date for each side, with no expectation of supplementation, withdrawing and adding, and continuous questions as to whether experts are in or out. Second, if Mr. Levine is permitted to resurrect Dr. Hilakivi-Clarke as an expert, then we are entitled to all of the data that she relies on in reaching the opinions, including her unpublished data. Once we have received those materials and have had an opportunity to prepare, we can take her deposition. In addition, as is true for Dr. Fischer, we would need to have the opportunity to have our experts review the unpublished data materials relied on by Dr. Hilakivi-Clarke and to supplement their expert reports. But this will be a significant undertaking because we will need to obtain the raw data underlying her report, which we will then need to have our experts review so we can properly prepare for Dr. Hilakivi-Clarke's deposition and have our experts supplement their reports. This will cause significant delay and necessitate the negotiation of a new CMO.

Issue No. 3:  Supplementary Reports. The above issues relating to Dr. Fischer and Dr. Hilakivi-Clarke illustrate a larger problem. We spent a significant amount of time negotiating a CMO. While it has a very aggressive schedule we did so, frankly, to accommodate the schedules of the parties and our desire to have the Court promptly address the critical science issues. But the CMO schedule will not work if not adhered to by the parties. Plaintiffs' expert reports were due on March 1. Neither the CMO nor the Federal Rules provide for rolling expert reports or supplemental reports. Permitting supplementation will require adjustment of the CMO.

Issue No. 4:  Naming Additional Experts Beyond the Time Period in the CMO.
Mr. Levine recently notified us that he will depose, as experts, two doctors (only one of whom was previously identified). We have not received expert reports for either. Mr. Levine advised that the depositions would take place in France in early June and that the experts would address the issue of the difference in dosage regimen of DES in the U.S. and the Netherlands. One of the individuals, Dr. van Os, was disclosed on March 1 but no report was provided. We learned of the other individual, Dr. Helmerhorst, for the first time last week. Mr. Levine says we will receive their reports before their depositions, but does not commit to when the reports will be provided. None of this is proper. Not only do we question whether their testimony is relevant, but we cannot have Mr. Levine adding experts and submitting reports in contravention to the CMO. He argues that these are supplemental to the ones already disclosed and are "in part rebuttal experts to your own experts' expected testimony." This is irrelevant because the CMO does not provide for rebuttal experts. If Mr. Levine wants to add these two individuals, or any

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Marianne B. Bowler
Page 4
April 22, 2011

others, we will object and the Court will need to determine whether such additions are
appropriate, and, if so, what changes are required to the CMO so that the defendants have
adequate time to prepare for the depositions and to confer with experts and supplement expert
reports as may be necessary.

      **Issue No. 5:  September Hearing**.  Mr. Levine's letter mentions "five days of
hearings" in September.  The CMO provides for the Daubert Hearing to be conducted from
September 12 through September 22, subject to the Court's availability.  We believe it most
appropriate to discuss the Daubert Hearing after Daubert issues have been fully briefed and are
before the Court.  This is another example of Mr. Levine attempting to change the "rules of the
game" mid-stream without consideration of the CMO or prior discussions with Court or defense
counsel.  Notwithstanding the above, we are always available to the Court to discuss whatever
issues or concerns the Court may have with respect to Daubert so that briefing on the Motion and
the manner in which the Hearing is conducted can best address the issues that will be submitted
for the review of the Court.

      **Issue No. 6:  The Complaint**.  We are not sure what Mr. Levine means in his letter
when he states he wants to discuss "adding or deleting plaintiffs" from the Complaint. We do not
understand why Mr. Levine is proposing to add or dismiss plaintiffs at this juncture.  However, if
Mr. Levine wants to dismiss the three plaintiffs who brought and settled DES cases with Lilly for
gynecologic claims, or dismiss any non-bellwether plaintiff, we will not object.  We will object if
Mr. Levine is thinking of deleting the bellwether plaintiff selected by defendants.

      We have tried to accommodate a very aggressive CMO.  Plaintiffs' untimely and
improper attempts to add new opinions for Dr. Fischer, the attempt to add new experts who
would be made available for deposition in France and for whom no reports have been provided,
and the on again off again status of Dr. Hilakivi-Clarke as an expert, coupled with the failure to
provide the unpublished data and material she relies on, require the Court's attention.

      The CMO was designed to require each side to provide by a date certain all of
their expert reports and support for their position on the critical science issues in this case, but
given the open issues described here, we do not have closure from Mr. Levine on his position,
which we require before we can proceed any further.  In the event the Court permits Plaintiffs to
proceed as Mr. Levine wishes, then we respectfully submit the Court will need to significantly
alter the CMO to accommodate these changes and to permit the defendants to adequately prepare
and to address new issues and opinions with its experts.  It is the defense belief that the Parties,
in accord with the CMO, should now be focusing on the depositions of defense experts and the
Court approved discovery of the bellwether plaintiffs and others so we can adhere to the
schedule to which plaintiffs and defendants previously agreed.

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Marianne B. Bowler
Page 5
April 22, 2011

Respectfully,

Samuel J. Abate, Jr.

Copy to:  Aaron Levine, Esq.
          David Covey, Esq.
          All Counsel